JUDITH WESCOAT, ADMINISTRATRIX OF LAVINIA WESCOAT, DECEASED, PLAINTIFF-RESPONDENT, v. JOHN H. DECKER, DEFENDANT-APPELLANT.

Argued November 21, 1913—Decided March 16, 1914.

Where there was evidence that what plaintiff's deceased did in a moment and position of imminent peril, resulting from defendant's automobile negligently charging down upon her at great speed while she was crossing a public street, was not in fact the best thing she could have done if there had been time for more mature deliberation, but that it was, nevertheless, the result of her natural uncertainty as to what was best to do in order to escape, her conduct cannot as a court question be held to constitute contributory negligence on her part.

On appeal from the Supreme Court, Atlantic Circuit.

For the defendant-appellant, *Bourgeois & Coulomb.*

For the plaintiff-respondent, *William M. Clevenger* and *John W. Wescott.*

The opinion of the court was delivered by

WHITE, J.  This is an action brought by the administratrix of Lavinia Wescoat, in behalf of her next of kin, consisting of her three adult children, for damages because of her death, caused by the alleged negligence of the defendant, in carelessly driving over her with his automobile while she was walking across Atlantic avenue, in Atlantic City.  So far as the circumstances attending the accident are concerned, it was clearly a fact case, and as such was properly left to the jury.  The defendant urges, it is true, that the uncontradicted evidence showed contributory negligence, in that the deceased when near the middle of this wide street (forty-six feet between curbs), and on the near street car track, looked at the on-coming automobile, when but a very short distance away, apparently in answer to its horn, and then stepped first back and then forward in front of the machine.  The difficulty with this proposition is that there was other evidence indicating that the automobile was driving at a very rapid rate; that it had not slackened its gait any since just passing a florist's messenger going the same direction and hurrying home late for lunch on his new bicycle with a fair wind, and a policeman some distance behind who had called to him not to run so fast.  This messenger, when asked how much faster the automobile was going than he was, said: "Oh, heavens, I hadn't a chance. He was nearly across the street (North Carolina avenue, the cross street on the far side of which the accident happened) before I was four or five feet."  If this testimony were true the woman was clearly in imminent danger from the on-rushing automobile charging down upon her when she looked up and stepped first back and then forward, as indicated in the evidence claimed to show contributory negligence.  If so,

her action may have resulted from natural uncertainty in a moment of extreme danger as to just what was best to do in order to escape, and under such circumstances the law is well settled, that, while what she did may not in fact have been the best thing she could have done, the court cannot decide, as a court question, that it constituted contributory negligence. *Tuttle* v. *Atlantic City Railroad Co., 37 Vroom* 327; *29 Cyc.* 521.

This also disposes of defendant's complaint that the learned trial judge refused to charge his third request, which was: "If the decedent looked and saw the automobile and stepped back to permit it to pass, and then stepped forward again immediately in front of the automobile, she was guilty of contributory negligence,'' &c.

It is also urged that the court erred in its charge with reference to the question of damages, and in refusing defendant's request upon that subject. Plaintiff's evidence showed that the deceased had contributed regularly to each of her three children, to one about $500 per year, to another about $250 per year, and to the third about eight to ten dollars per week, and that these contributions were from the mother's "own money." The defendant brought out, upon cross-examination, the fact that deceased died intestate and that her separate property was partially mortgages and other personal property, and partially real estate, but in what proportion or how much of each does not appear. The age of the deceased was proved by the plaintiffs, but not the age of her husband. It is now urged that the failure to prove the age of the husband presents an absolute barrier to recovery, because any real estate which formed a part of deceased's estate, would come to these next of kin as her heirs-at-law upon the termination of her husband's life estate by the courtesy therein, and that consequently, under the authority of *Demarest* v. *Little, 18 Vroom* 28, their receipt at that time of the principal from which part of deceased's income, out of which part of the contributions were made, emanated, will naturally terminate any injury thereafter from a loss of contributions from that part of the income.

We are unable to concur in this view. After the plaintiffs had proved that the contributions were made by the deceased from her own money, and had also proved circumstances which might convince the jury that but for her death the contributions would have continued during her lifetime, they had established a *prima facie* basis for an estimate of damage according to the average expectation of life of one of her age, health and circumstances. It then became a matter of defence to show that, by reason of the fact that a certain part of the principal of her separate estate would at a particular time become the property of the plaintiffs, the income upon that part and the portion of the anticipated contributions which might be supposed to be derived therefrom, must be eliminated, from that time on, in estimating the damages. The burden was on the defendant, and the mere circumstance that the incomplete portion of this burden which he did bear was brought out by him on cross-examination of the plaintiffs' witnesses instead of in his own case, does not alter its nature. It was no part of the plaintiffs' case to show what would become of the mother's property *after her death.* Their burden was to satisfy the jury that she would in all probability have continued to have the means to make, and would have made, the contributions during *her natural life.* Defendant might then defeat the claim *in toto* by showing that the whole fund out of which the contributions must have come went to plaintiffs immediately, by will, by descent, or otherwise; or defeat it in part by showing that all of the fund would come to them after the termination of a life estate, as in the Demarest case, *supra,* or that a certain definite portion would so come, as would have been this case if defendant had proved the amount or proportion of the fund which was real estate. It was not enough for him to show that "some" of the fund would be thus affected; he must show "how much." He says that having shown "some," the jury does not know "how much," and so cannot reach a verdict without "guessing," which they must not be permitted to do. But the only "guessing" was as to the size of the defendant's defence.

The judgment is affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, BERGEN, MINTURN, KALISCH, BOGERT, VREDENBURGH, CONGDON, WHITE, HEPPENHEIMER, JJ. 10.

*For reversal*—PARKER, J. 1.