PERCY D. SANDERSON *v.* BOSTON & MAINE RAILROAD.

November Term, 1916.

Present: MUNSON, C. J., WATSON, HASELTON, POWERS, and TAYLOR, JJ.

Opinion filed May 8, 1917.

*Evidence—Jury Question—Negligence — Contributory Negligence — Sudden Danger — Judicial Notice — Master and Servant—Safe Place Doctrine—Assumption of Risk—Risk due to Negligence of Master—Duty to Warn and Instruct—Federal Employers' Liability Act—Recovery Under—Negligence of Servant Not Sole Cause of Injury.*

Where plaintiff changed his testimony from that previously given by him it was for the jury to say what he intended by his earlier statement, and what fact his evidence, taken as a whole, tended to establish.

In an action bought by a brakeman against the railroad company by which he was employed, under the Federal Employers' Liability Act, to recover for injuries sustained by being thrown from the side ladder of a freight car, on coming in contact with another car standing upon a parallel track, *held*, there was evidence tending to show that the injury complained of was received by plaintiff while in the line of his duty, that it was due to defendant's negligence; that the risk was not obvious and was unknown to plaintiff, and that no instruction or caution had been given by defendant; and that it could not be said as matter of law that the danger could have been seen and appreciated by plaintiff in time to have been avoided by him.

One who suddenly finds himself in a dangerous situation for which he is not responsible is not held to the exercise of the coolest judgment.

That it is essential, and not negligent, that there be many tracks close together in large freight yards in cities is not a fact resting in judicial knowledge, but is one to be established by evidence.

It is the duty of a railroad company to provide such tracks and cars and such supervision and regulation as to their use as will afford a brakeman in its employ a reasonably safe place in which to do his work, and negligence in this respect which makes the place of

work unnecessarily hazardous is chargeable to the company without inquiry as to the officers, agents or servants thereof by whose instructions or conduct the dangerous situation is created.

A dangerous situation due to the negligence of a master is not an ordinary risk of a servant's employment, and so is not assumed by the servant, unless he knows and comprehends it, or unless it is so obvious that he ought to know and comprehend it.

It is the duty of a master to instruct and caution his servant regarding a risk of the employment of which the latter is excusably ignorant.

In an action brought under the Federal Employers' Liability Act negligence on the part of the plaintiff which cannot be said to be the sole cause of his injury will not bar recovery.

ACTION brought under the Federal Employers' Liability Act, (Act April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. 1916, §§ 8657-8665]), to recover damages for personal injuries alleged to have been sustained by the negligence of defendant. Plea, the general issue. Trial by jury at the December Term, 1915. Caledonia County, *Stanton,* J., presiding. Verdict for plaintiff. Defendant excepted. The opinion states the case.

*George B. Young* and *Walter H. Cleary* for defendant.

*Porter, Witters & Harvey* for plaintiff.

MUNSON, C. J. The plaintiff, a brakeman employed by the defendant, was injured in the defendant's freight yard at Lowell, Mass., while upon the upper rounds of the side-ladder of a moving freight car, by striking against the corner of one of several freight cars which were standing together on another track. The suit is brought under the Federal Employer's Liability Act, and seeks to recover on account of the negligence of the defendant as alleged in a declaration and amendment thereof containing seventeen counts. The only exception argued is one taken to the overruling of the defendant's motion for a directed verdict. The grounds of the motion as therein stated present the claims that there is no evidence tending to show negligence on the part of the defendant; that on the evidence presented the sole cause of the accident was the plaintiff's negligence; that the risk was one naturally incident to the plaintiff's employment and therefore an assumed risk; that the risk was

due to a permanent condition of which the plaintiff had or ought to have had knowledge, and was therefore assumed by his continuing in the work without objection. The testimony of the plaintiff is all the evidence we have regarding the location of the tracks and the manner in which he received his injury.

The plaintiff had worked for the defendant as a brakeman over three years, first irregularly as a spare hand, and afterwards continuously on a regular extra train. His runs during this time were on different lines, some of which passed through the Lowell yards, where there was frequently some shifting of cars by the crew. At the time of the accident, which occurred just before dark, the plaintiff was the flagman and had the care of the lamps, and these he had ready for lighting before going to the work in which he was injured. He testified that he was sometimes called upon to assist the conductor, and that it was his duty when his own work was done to help get the train over the road. On this occasion he had been helping the conductor check up some cars, and had afterwards gone forward on the top of the rear cars letting off some brakes. In thus passing up the train he came to the car on which he was injured, and started to go down the side-ladder to set a switch. As he was beginning to descend he glanced ahead and saw, some 35 feet away, among the cars standing on the next track, one which stood out further than the rest, which he thought would not clear him. He attempted to get back upon the roof of the car, but was hit by the projecting car and thrown to the ground. The plaintiff testified that no one asked him to set this switch, but that there was no one else there to do it; that the middle man sometimes set the switch, and that he thought he was then on that section of the train.

The plaintiff testified that he had occasionally helped in making shifts in this yard, but was not very familiar with the tracks; that he had never known of a brakeman being knocked off a side-ladder by a car on another track; that he had never been told or cautioned regarding such a risk, and had never known but what, between tracks, there was room enough to ride on the ladder; that he had seen cars that were not set in to clear, where a man riding on the side would get hit; that the rule was to set cars in far enough so that they would clear, and that he always supposed that that was the practice, but that he did not know as he had observed enough to know what the practice was;

that cars could not be left on a curve, but must be on where the track was straight, and that all that was necessary was to have them far enough on to clear everything on the next track; that where he had testified about clearing the cars he meant clearing the car and a person on the side of it.

In one place the plaintiff testified that he did not know whether the car he struck stood on a cross-over or not, but he stated elsewhere that they had passed cars before coming to this one, and that there were cars beyond this, and these statements indicate that the car was not on a cross-over.

Defendant comments upon the answers which the plaintiff gave in stating what he understood the requirement to be as regards adequate provision for the "clearing" of the cars, and calls attention to the fact that it was not until after plaintiff's counsel had had an opportunity to confer with him that he changed his testimony to include the clearing of a person on the car, and insists that this change is not sufficient to do away with the effect of his previous testimony. But it was manifestly for the jury to say what the plaintiff intended by his earlier answers, and what fact his evidence on this point as a whole tended to establish.

It is said there was no evidence as to the exact distance between the tracks, nor as to the distance necessary to make them safe; and no evidence as to the size of the car which struck the plaintiff, nor that it was a large car. It was not necessary that these matters should be determined by measurement. The plaintiff's description of the car as he saw it was evidence tending to show that it was a large car. This car, standing on a parallel track, struck the plaintiff while he was on the side-ladder of a car. This was evidence tending to show one of two things— either that the tracks were too close to one another, or that the car was too wide to be used where cars were equipped with side-ladders. It is said that the plaintiff's injury resulted from a fixed and unchanged condition which extended throughout his period of service. But this condition, ordinarily safe, was made dangerous by the introduction of a car not adapted to it. It is argued that the sole cause of the accident was the plaintiff's failure to select for his descent a car which had an end ladder. There is no evidence that any of the cars had such a ladder. It is said that the plaintiff was working as a volunteer. The plaintiff testified that after his special work was done it was his duty

to assist in getting the train along; that he was then doing the work on the rear end of the train; and that he was going down to set a switch to enable it to back out on another track. This was evidence tending to show that his injury was received while in the line of his duty.

It is argued that the risk which the plaintiff encountered was open and obvious, and must have become known to him during his employment. The danger arose from the unusual width of the car standing on the parallel track, in connection with an allowance of space between the tracks sufficient only for cars of ordinary width. A trainman riding on the top of a freight car could hardly be expected to judge accurately of the sufficiency of such a space to answer an unusual and unexpected requirement. The plaintiff prudently acted on the supposition that the tracks were not far enough apart to permit him to clear a car of unusual width, and endeavored to avoid the danger as soon as he discovered it. It is said, however, that he saw and appreciated the danger before he reached the car, and that he could have seen and appreciated it in time to avoid all risk, if he had looked ahead carefully before starting to descend; and that in undertaking to escape from the danger he did not act with prudence and promptness. But it cannot be said as matter of law that he ought to have seen the car sooner; and a servant who suddenly finds himself in a dangerous situation for which he is not responsible is not held to an exercise of the coolest judgment.

It is said that in large freight yards in cities it is absolutely essential that there be many tracks close together, and that it is not negligence to have them so arranged. This statement, as applied to the situation presented here, cannot be accepted as asserting a fact resting in judicial knowledge. The language is evidently based on what was said in the opinion in *Randall* v. *B. & O. R. R. Co.,* 109 U. S. 478, 27 L. ed. 1003, 3 Sup. Ct. 322, where the plaintiff was struck by an engine while standing in an unnecessarily exposed position to throw a ground switch, which was required instead of an upright one because of the nearness of the tracks. The reference in this connection to the necessity of a great number of tracks and switches close to one another cannot properly be applied to the sections of parallel tracks existing between the diverging and approaching sections connected with the switches. If there was a necessity for the

proximity of these tracks which could afford a basis for the claim that the risk of such a collision as occurred here was assumed by the plaintiff, it was a fact for the defendant to establish by evidence.

The inquiry is whether the evidence shows a case for the plaintiff under the Federal Employer's Liability Act. It was the duty of the defendant to provide such tracks and cars, and such supervision and regulation of their use, as would afford the plaintiff a reasonably safe place in which to do his work. The evidence of the plaintiff discloses a negligence in this respect which made his place of work unnecessarily hazardous; and this negligence is chargeable to the defendant without inquiring as to the officers, agents or servants by whose instructions or conduct the dangerous situation was created. The situation being due to the defendant's negligence, it was not an ordinary but an extraordinary risk, and therefore a risk not assumed by the plaintiff, unless he knew and comprehended it, or unless it was so obvious that he ought to have known and comprehended it. If it was a risk of which the plaintiff was excusably ignorant, it was the duty of the defendant to instruct and caution him regarding it. There was evidence tending to show that the risk was not obvious, and that the plaintiff had no knowledge of it, and that no instruction or caution regarding it had been given. If the plaintiff himself was negligent in any particular, this will not bar his recovery, for it cannot be said that his negligence was the sole cause of his injury.

The claim that there was no evidence tending to support the charge of negligence as presented in any single count is sufficiently met by the views already expressed. See generally *Lynch* v. *Central Vt. Ry. Co.*, 89 Vt. 363, 95 Atl. 683; *White* v. *Central Vt. Ry. Co.*, 87 Vt. 330, 89 Atl. 618; *Central Vt. Ry. Co.* v. *White*, 238 U. S. 507, 59 L. ed. 1433, 35 Sup. Ct. 865, Ann. Cas. 1916B, 252; *Carleton* v. *Fairbanks Co.*, 88 Vt. 537, 93 Atl. 462; *Morrisette* v. *Canadian Pac. Ry. Co.*, 74 Vt. 232, 52 Atl. 520; *McDuffee* v. *Boston & Maine R. R.*, 81 Vt. 52, 69 Atl. 124, 130 Am. St. Rep. 1019.

*Judgment affirmed.*